U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 1 5 2006

ROBERT H. SHEMWELL, CLERK
BY_____
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE - OPELOUSAS DIVISION

| | |
|---|---|
| TRIANGLE OIL & GAS, INC. | CIVIL ACTION NO. CV06-0251 L-O |
| *Plaintiff* | |
| | JUDGE: JUDGE MELANÇON |
| VERSUS | |
| | MAGISTRATE JUDGE: |
| PETSEC ENERGY, INC. AND PETSEC ENERGY, LTD. | MAGISTRATE JUDGE METHVIN |
| *Defendants.* | |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Triangle Oil & Gas, Inc. (hereinafter "Triangle") who respectfully alleges as follows:

### I. Parties, Jurisdiction and Venue

1.

Triangle is a Louisiana corporation with its principal place of business in Lafayette, Louisiana.

2.

Made defendants herein are:

(a) Petsec Energy, Inc. ("Petsec"), upon information and belief a Nevada corporation with its principal place of business in Lafayette, Louisiana. Petsec may be served with process under Rule 4(d) or 4(h) of the Federal Rules of Civil Procedure, as

appropriate; and

(b) Petsec Energy, Ltd. ("Petsec Ltd."), upon information and belief a foreign corporation domiciled in Australia. Petsec Ltd. may be served with process under Rule 4(d) or 4(h) of the Federal Rules of Civil Procedure, as appropriate.

3.

Upon information and belief, Petsec is a wholly-owned subsidiary of, and is controlled by, Petsec Ltd.

4.

This court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §1331 and 43 U.S.C. §1331, *et seq.*, because the cause of action that forms the basis of this action accrued in whole or in part on a fixed platform located in the federal waters on the Outer Continental Shelf. To the extent not inconsistent with federal law, the law of the adjacent state applies as borrowed federal law.

5.

Venue is proper in this district under 43 U.S.C. §1349 because the court has subject matter jurisdiction over the matter and the defendants may be found in this district.

## II. Factual Background

6.

Block 19, Main Pass Area, is located in federal waters on the Outer Continental Shelf, and is currently covered by a federal oil and gas lease, having identification number OCS-G-26146, granted by the United States Minerals Management Service (the "Block 19 Lease").

7.

Triangle and Petsec are co-owners of the entire record title interest in the Block 19 Lease. Triangle owns an undivided forty-five (45%) percent leasehold working interest in the Block 19 Lease, while Petsec owns the remaining fifty-five (55%) percent leasehold working interest in the Block 19 Lease.

8.

Triangle and Petsec have entered into a Joint Operating Agreement ("JOA") to govern the conduct of operations under the Block 19 Lease, including without limitation operations to explore for hydrocarbons under Block 19 and to develop and produce same. A copy of the JOA is attached hereto as Exhibit "A" and the terms and provisions of the JOA are incorporated by reference herein. Petsec currently serves as the Operator pursuant to the JOA.

9.

The JOA, by its express terms, is limited solely to operations under the Block 19 Lease designed to explore for hydrocarbons under Block 19 and to develop and produce same including, without limitation, the drilling of wells and the construction and use of platforms, caissons, production facilities and other equipment on Block 19.

10.

In 2005, Triangle and Petsec drilled and completed three (3) wells on the Block 19 Lease. The subject wells, which were drilled for the benefit of the joint account established by the JOA (the "Joint Account"), discovered commercial hydrocarbon reserves situated beneath the Block 19 Lease.

11.

Pursuant to the terms of the JOA, Triangle and Petsec thereafter constructed and installed a fixed platform on Block 19, as well as certain ancillary structures (hereinafter collectively the "Platform"), to facilitate further operations under the Block 19 Lease.

12.

Triangle and Petsec constructed and installed the Platform for the benefit of the Joint Account under the terms of the controlling JOA. Further, the Platform was constructed and installed solely for the drilling of wells under the Block 19 Lease and the handling of production therefrom, and the JOA prohibits any other use of the Platform.

13.

Triangle has fully paid for its forty-five (45%) percent share of all costs associated with the construction and installation of the Platform for which it has been billed to date, and has fully complied with all of its obligations under the JOA, or otherwise, related to the Platform.

14.

Triangle and Petsec constructed and installed on the Platform certain production facilities (the "Facilities") for the specific and exclusive purpose of processing production obtained from Block 19.

15.

Triangle and Petsec constructed and installed the Facilities for the benefit of the Joint Account under the terms of the controlling JOA. Further, the Facilities were constructed and installed solely for the processing of production from Block 19, and the JOA prohibits any other use of the Facilities.

16.

Triangle has fully paid for its forty-five (45%) percent share of all costs associated with the construction and installation of the Facilities for which it has been billed to date, and has fully complied with all of its obligations under the JOA, or otherwise, related to the construction and installation of the Facilities.

17.

Pursuant to the terms of the JOA, Triangle and Petsec constructed and installed on Block 19 a pipeline (the "Pipeline") for the specific and exclusive purpose of transporting production from wells under the Block 19 Lease to one or more sales points.

18.

Triangle and Petsec constructed and installed the Pipeline for the benefit of the Joint Account under the terms of the controlling JOA.

19.

Triangle has fully paid for its forty-five (45%) percent share of all costs associated with the construction and installation of the Pipeline for which it has been billed to date, and has fully complied with all of its obligations under the JOA, or otherwise, related to the construction and installation of the Pipeline.

20.

Following installation of the Platform, the Facilities and the Pipeline, Triangle and Petsec drilled three (3) additional wells on Block 19 to jointly explore for and develop hydrocarbon reserves pursuant to the Block 19 Lease.

21.

The aforementioned wells, together with the wells previously drilled by Triangle and Petsec prior to installation of the Platform, Facilities and Pipeline, were drilled pursuant to the terms of the controlling JOA for the benefit of the Joint Account ("Joint Account Wells").

22.

Triangle's share of the costs to date to construct and install the Platform, Facilities and Pipeline is approximately $7.7 million.

23.

Triangle's share of the costs to drill and complete the Joint Account Wells will be approximately $15 million.

24.

Block 18, Main Pass Area, is located in federal waters on the Outer Continental Shelf, and is currently covered by a federal oil and gas lease, OCS-G-27194, granted by the United States Minerals Management Service ("Block 18"). Defendants own one hundred (100%) percent of the leasehold working interest in Block 18; Triangle owns no interest whatsoever in Block 18.

25.

Block 103, Main Pass Area, is located in federal waters on the Outer Continental Shelf, and is currently covered by a federal oil and gas lease, OCS-G-27200, granted by the United States Minerals Management Service ("Block 103"). Defendants own one hundred (100%) percent of the leasehold working interest in Block 103; Triangle owns no interest whatsoever in Block 103.

26.

Following the drilling of the most recent Joint Account Well, Petsec, at the direction of Petsec Ltd., unilaterally commenced drilling a directional well (the "G-6 Well") from the jointly owned Platform on Block 19 to a bottom-hole location on Block 18 to explore for hydrocarbon reserves situated beneath Block 18.

27.

Petsec was required to shut-in all production from Block 19, including Triangle's share of such production, in order to commence drilling of the G-6 Well. Further, completion of certain of the recently drilled Joint Account Wells has been delayed by the Defendants over Triangle's objection, so that Defendants can drill the G-6 Well.

28.

Triangle has never consented to the Defendants' use of the Platform, Pipeline, Facilities and/or other jointly owned property or equipment on Block 19 for the drilling of the G-6 Well, and has expressly objected to the use of the assets of the Joint Account for the drilling of said well.

29.

In order to drill the G-6 Well to a proposed bottom-hole location on Block 18 from a surface location on Block 19, the wellbore of the G-6 Well must necessarily cross the subsurface of Block 19. Further, Defendants' unilateral and unauthorized drilling of the G-6 Well deprives the Joint Account of a valuable slot, which slot could otherwise be used for operations on behalf of the Joint Account.

30.

In the event that the G-6 Well is completed as a commercial producer from Block 18, Defendants will be required to process production from such well prior to delivering hydrocarbon production into one or more sales pipeline(s).

31.

Upon information and belief, Defendants intend to utilize the Facilities and the Pipeline to process and transport production from the G-6 Well.

32.

Upon information and belief, Defendants further intend to drill additional wells on Block 18 and Block 103, and to connect said wells to the Platform, the Facilities and/or the Pipeline.

33.

Defendants' actions have caused Triangle to incur losses and damages in an amount which, upon information and belief, exceeds $10 million.

### III. Claims and Requested Relief Against Petsec

### Count 1 - Breach of Contract

34.

Petsec, under the direction and control of Petsec, Ltd., has breached the terms of the JOA and violated its position as Operator of Block 19 by, *inter alia,* unilaterally and in bad faith conducting unauthorized operations on the Block 19 Lease, the Platform, the Facilities and/or the Pipeline for the benefit of Defendants' interest in Block 18 and to the detriment of the Block 19 Lease; drilling the G-6 Well to Block 18 from the jointly-owned Platform without Triangle's

consent and against Triangle's express objection; exposing Triangle and its proportionate share of the reserves and Joint Account Wells on Block 19, as well as the Platform, the Facilities and the Pipeline, to significant risk by virtue of Defendants' unauthorized actions; hampering and/or interfering with Triangle's ability to satisfy certain contractual obligations to third parties; and depriving the Block 19 Joint Account of the benefits and advantages of co-ownership to which it is entitled, and to which Petsec as Operator under the JOA was entrusted to secure and protect.

### Count 2 - Breach of Partnership Duty

35.

The relationship between Triangle and Petsec under the JOA is that of a partnership, which gives rise to an obligation on the part of Petsec to deal with such partnership assets only for the benefit of the partnership and not for Petsec's exclusive benefit, as well as an obligation to refrain from placing partnership assets at risk.

36.

Petsec, under the direction and control of Petsec Ltd., has breached such obligations by unilaterally and in bad faith using partnership assets to conduct unauthorized operations for the benefit of Defendants' interest in Block 18 and to the detriment of the Block 19 Lease including, but not necessarily limited to, drilling the G-6 Well to Block 18 from the jointly owned Platform on Block 19.

### Count 3 - Breach of Fiduciary Duty

37.

By virtue of the JOA, the above-recited facts and/or Petsec's status as Operator of Block 19, the Joint Account Wells, the Platform, the Facilities and the Pipeline, Petsec was and is in a confidential or fiduciary relationship with Triangle.

38.

Petsec, under the direction and control of Petsec, Ltd., breached its duties to Triangle arising out of such relationship by, *inter alia*, unilaterally and in bad faith drilling without authority the G-6 Well to Block 18 from the jointly owned Platform on Block 19 for the benefit of Defendants' interest in Block 18 and to the detriment of Triangle; placing the Block 19 Lease, the Platform, Facilities, Pipeline and Joint Account Wells at risk by unilaterally conducting unauthorized operations for the benefit of Defendants' interest in Block 18 and to the detriment of Triangle and the Block 19 Lease without Triangle's consent; and abusing its position as Operator of Block 19 by using assets of the Joint Account for the benefit of Defendants' interest in Block 18 and by depriving the Joint Account of the benefits and advantages of co-ownership to which Triangle is entitled, and which Petsec was entrusted to secure and protect.

### Count 4 - Conversion

39.

By conducting unauthorized and bad faith operations for the benefit of Defendants' interest in Block 18 including, but not necessarily limited to, drilling the G-6 Well to Block 18 from the jointly owned Platform on Block 19, Defendants have deprived Triangle of certain

rights associated with the Block 19 Lease, the Platform, the Facilities, and/or the Pipeline. Said conversion was accomplished in bad faith with legal malice and willfulness, and/or was done in knowing violation of Triangle's rights.

### Count 5 - Trespass

40.

By its actions hereinabove described, Defendants have trespassed, and continue to trespass, on the Block 19 Lease, the Platform, the Facilities, and/or the Pipeline and Triangle's interest therein, resulting in damage to Triangle. Said trespass was and is intentional and in bad faith, and was and is being accomplished with legal malice, willfulness and/or insult, and/or in knowing violation of Triangle's rights.

### Count 6 - Permanent Injunction

41.

In order to protect Triangle's rights and interests, it is necessary that this Court permanently restrain and enjoin Defendants from current and/or future unauthorized use of the Block 19 Lease, the Platform, the Pipeline and/or the Facilities.

### Count 7 - Declaratory Judgment

42.

Triangle, pursuant to 28 U.S.C. § 2201, respectfully requests that this Honorable Court enter a judgment finding and declaring that:

    a.    under the JOA and the circumstances, Defendants have a legal duty to refrain from using the Block 19 Lease, the Pipeline, the Platform and/or the Facilities for operations of any kind other than operations undertaken under the Block 19 Lease for the exclusive benefit of Block 19;

    b.    Defendants have breached said duty and continue to breach said duty;

    c.    Defendants are not authorized to connect the G-6 Well, or any other well that is not proposed and drilled pursuant to the JOA, to the Platform, Pipeline and/or Facilities without the express consent of Triangle;

    d.    Petsec should be removed as Operator of Block 19 pursuant to the relevant provisions of the JOA; and

    e.    Triangle should replace Petsec as Operator of Block 19.

### Count 8 - Unjust Enrichment

43.

Defendants have been enriched by the unilateral and unauthorized use of the assets of the Joint Account including, but not necessarily limited to, the Block 19 Lease, the Platform, the Pipeline and/or the Facilities.

44.

Triangle has been impoverished as a result of Defendants' unauthorized acts.

45.

There is a direct connection between the enrichment of Defendants and the impoverishment of Triangle in this matter.

46.

The aforementioned enrichment of Defendants, and related impoverishment of Triangle, were not justified.

WHEREFORE, Triangle respectfully requests entry of judgment in its favor and against defendants Petsec Energy, Inc. and Petsec Energy, Ltd. as follows:

    a.    For damages, whether foreseeable or unforeseeable, to compensate Triangle in such amount as may be assessed by this Honorable Court, including profits derived from Petsec's unauthorized use of the assets of the Joint Account and other damages to which Triangle is entitled on account of Defendants' bad faith, together with interest and costs;

    b.    For all punitive and/or enhanced damages as may be available to Triangle under applicable law;

    c.    For permanent injunctive relief restraining and enjoining Defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from any further violation of Triangle's rights including, without limitation:

        i.    conducting operations on the Block 19 Lease, the Platform, Pipeline and/or Facilities other than as authorized by the JOA;

      ii.    trespassing against the rights of Triangle in the Block 19 Lease, the Platform, the Pipeline and/or the Facilities including, without limitation, continued use of the G-6 Well; or

      iii.    processing production from any well not proposed and drilled pursuant to the JOA, including without limitation the G-6 Well, in the Facilities.

d.    For entry of a judgment declaring that:

      i.    Defendants have a legal duty to refrain from using the Block 19 Lease, the Pipeline, the Platform and/or the Facilities for operations of any kind other than operations undertaken for the exclusive benefit of the Block 19 Lease;

      ii.    Defendants have breached said duty and continue to breach said duty;

      iii    Defendants are not authorized to process production from the G-6 Well, or any other well that is not proposed and drilled pursuant to the JOA, in the Facilities;

      iv.    Defendants are not authorized to use the Platform, Pipeline and/or Facilities except in connection with operations under and for the exclusive benefit of the Block 19 Lease without the express consent of Triangle; and

      v.    Petsec should be removed as Operator of Block 19, and should be replaced by Triangle.

e.    for an award of reasonable attorneys' fees to Triangle; and

f.    for such other and further relief as this Honorable Court may deem just and fair.

Respectfully submitted,
**PERRET DOISE, APLC**

BY: _____
HENRY C. PERRET, JR. (Bar Roll #10514)-T.A.
GARY J. RUSSO (Bar Roll #10828)
JOHN W. KOLWE (Bar Roll #20903)
TED M. ANTHONY (Bar Roll #21446)
600 Jefferson Street, Suite 1600
P.O. Drawer 3408
Lafayette, LA 70502-3408
Telephone: (337) 262-9000
Facsimile: (337) 262-9001

Attorneys for Plaintiff Triangle Oil & Gas, Inc.

F:\DATA\Tma\2809.0Triangle.Advice\Petsec Lawsuit\complaint.ver2.wpd

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE - OPELOUSAS DIVISION

| | | |
|---|---|---|
| **TRIANGLE OIL & GAS, INC.** *Plaintiff* | : | **CIVIL ACTION NO.** |
| | | **JUDGE:** |
| **VERSUS** | : | |
| | | **MAGISTRATE JUDGE:** |
| **PETSEC ENERGY, INC., et al.** *Defendants.* | : | |

: : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

## **VERIFICATION**

BEFORE ME, the undersigned Notary in and for the parish of Lafayette, State of Louisiana, appeared

Richard L. Miller

who, after being duly sworn, stated as follows:

1.  The undersigned serves as Vice President of Triangle Oil & Gas, Inc.

2.  The facts and allegations set forth in the attached Complaint are true and correct to the best of my knowledge and belief.

_____
RICHARD L. MILLER

Sworn to and subscribed before me this 15th day of February, 2006.

_____
NOTARY PUBLIC
My Commission Expires: At Death
Bar Roll No. 21,446

# PERRET DOISE
A PROFESSIONAL LAW CORPORATION

MAILING ADDRESS:
P. O. DRAWER 3408
LAFAYETTE, LOUISIANA 70502-3408

TED M. ANTHONY
TANTHONY@PERRETDOISE.COM

SUITE 1600, FIRST NATIONAL BANK TOWERS
600 JEFFERSON STREET
LAFAYETTE, LOUISIANA 70501
TELEPHONE (337) 262-9000
FACSIMILE (337) 262-9001

OUR FILE NUMBER:
2809.2

February 15, 2006

**VIA HAND DELIVERY**

Ms. Cathy Bacon
United States District Clerk
2100 John M. Shaw U.S. Courthouse
800 Lafayette Street
Lafayette, Louisiana  70501

    Re: *Triangle Oil & Gas, Inc. vs. Petsec Energy, Inc. and Petsec Energy, Ltd.*, U.S. District Court, Western District of Louisiana, Lafayette-Opelousas Division
Docket No._____

Dear Ms. Bacon:

    Enclosed herewith for the above-referenced **new** lawsuit are:

1. Executed Civil Cover Sheet;
2. **Original and two (2) copies** of a Complaint (with Exhibit "A"), along with a Verification;
3. Our firm check in the amount of $250.00 for filing fees; and
4. Summons in a Civil Case

    Please file same and return two file-stamped copies to us showing the docket number assigned to the case.

    If you have any questions, please do not hesitate to contact us.

    With kind regards, I am

                                      Very truly yours,

                                      Ted M. Anthony

TMA/jh
Enclosures
cc: Client