RECEIVED

JUN 2 0 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TRIANGLE OIL & GAS, INC. | CIVIL ACTION NO. 06-0251 |
| VERSUS | JUDGE DOHERTY |
| PETSEC ENERGY, INC., ET AL | MAGISTRATE JUDGE METHVIN |

## BOND RULING

This Court previously has issued a preliminary injunction prohibiting Petsec Energy, Inc. from taking certain actions with regard to the G-6 well as it relates to the platform, co-owned by Petsec and Triangle Oil & Gas, Inc., which is located on Block 19. At that time, this Court put the parties on notice that the injunction would be supplemented to include a bond requirement. Briefing on the question as to the proper amount of the bond has now been received from all counsel and the question was taken under advisement.

Rule 65 of the Federal Rules of Civil Procedure establishes a district court's authority to issue preliminary injunctions and establishes the circumstances under which such an order may be issued. One of the requirements imposed by Rule 65 is the posting of security by any party in whose favor a preliminary injunction is issued. "No restraining order or preliminary inunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ Proc. 65(c). The Fifth Circuit has ruled that the imposition of a bond requirement is designed to serve two functions:

> (1) it assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured, and (2) it provides the plaintiff with notice of the maximum extent of its potential liability, since the amount of the bond 'is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith.' The bond can thus be viewed as a contract in which the court and plaintiff 'agree' to the bond amount as the 'price' of a wrongful injunction.

The Continuum Company, Inc. v. Incepts, Inc., 873 F.2d 801, 803 (5th Cir. 1989). During the hearing held by this Court prior to the issuance of the preliminary injunction, it became apparent that the parties disagreed significantly as to the proper amount of security which should be posted in order to protect Petsec's interests in the event that the injunction was wrongfully issued. Due to the complexities associated with ascertaining the potential damage to which Petsec Energy, Inc. is exposed in the event the preliminary injunction is found to have been wrongfully issued, this Court invited the parties to submit briefing and/or evidence on that issue.

With regard to the measure of Petsec's damages that could result from the wrongful issuance of the preliminary injunction, Triangle argues that the only potential risk of damages is that associated with the delay in receiving funds from the sale of hydrocarbons expected to be produced by the time the parties' rights have been determined in this matter. Furthermore, Triangle proposes basing the calculation of those delay damages on the defendant's assumptions about the anticipated productivity of the G-6 well as reflected in the affidavit of Ross A. Keogh, president and treasurer of Petsec Energy, Inc., submitted prior to the issuance of the preliminary injunction, and which is attached as Exhibit B to Triangle's Bond Memorandum. Bond Memorandum of Triangle Oil & Gas, Inc. [Doc. 59], at Exhibits A, B. The defendant has proposed, similarly, that the calculation of delay damages should be based on those same projections. As the parties seem to be in agreement that

these projections provide a proper basis for calculating delay damages, this Court will found its calculations of delay damages on those projections evidenced in Mr. Keogh's earlier affidavit.

Although agreeing to that starting point, the parties' arguments diverge substantially on three issues related to the calculation of those damages. Each will be addressed separately.

First, Triangle argues that, while Petsec's projections anticipate that hydrocarbons will be produced for 18 months, or more, Triangle believes that the G-6 well will not produce hydrocarbons for longer than nine (9) months. This Court is in no position to determine the actual productive life of the well, particularly as experts in the field disagree, and all agree the unknowns within the world of exploration for and recovery of oil and gas are real and many. While Triangle requests that this Court delay its ruling on the amount of the bond in order to resolve this issue by extensive discovery and evidentiary hearing, this Court finds it is not necessary to make that factual determination at this point. Triangle has asserted, as a general proposition, that it is appropriate to use Petsec's projections as to the *amount of production* anticipated from the well and, indeed, has used those projections as the basis of its argument concerning potential delay damages. Having asserted the projections are reasonable in one respect, Triangle will not be heard to challenge other elements of the same projections they previously have suggested are acceptable. In view of Triangle's general representation that Mr. Keogh's projections provide a reasonable basis for calculating potential damages at this point, this Court will base its calculations on the entirety of those projections, including the time period during which production is anticipated to continue.

Second, Triangle argues in favor of using the federal judicial interest rate for those calculations while Petsec requests the use of the Louisiana judicial interest rate. As any judgment in favor of Petsec for damages resulting from the wrongful issuance of the preliminary injunction

in this matter would be issued by this Court, the federal rate of interest would be applicable to any such judgment.

> Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). The statutory provisions concerning the award of judicial interest (both requiring that it be awarded and determining the rate at which such interest will be calculated) are stated as a mandate, not as a matter of discretion. As such, this Court will calculate Petsec's potential losses using the federal judicial interest rate, as described in § 1961. Triangle has represented to the court that the currently-applicable federal judicial interest rate is 5.01%. Petsec has not challenged that representation. Thus, the calculation of the delay-related costs will use the federal judicial interest rate of 5.01% for purposes of determining the security amount.

Third, Triangle argues that the monthly lease operating expenses attributable to the hydrocarbons produced, on the Block 19 platform, through the G-6 well would average $25,000 per month, whereas Petsec argues in favor of using operating expenses that vary from between $6,000 and $10,000. Given the large amounts of hydrocarbons anticipated under Petsec's model (between 60 and 100 million cubic feet of gas and up to 103 barrels of oil per month), and in light of the revenue Petsec anticipates generating through that one well (up to $640,000 per month), this Court finds that Triangle's assumption concerning the monthly lease operating expenses is more reasonable as an estimate of those costs and will use that amount in its calculations.

For the foregoing reasons, this Court finds that, in the event the preliminary injunction is found to have been issued wrongfully, the estimated damages resulting to Petsec from the delay in

receiving production income would be approximately $350,660. This Court has arrived at that amount, using Petsec's loss calculations as reflected on Exhibit 2 to its Bond Memorandum [Doc. 60], by adjusting those calculations in two ways: (a) increasing the anticipated monthly lease operating expenses to $25,000 and (b) using the federal judicial interest rate of 5.01% rather than the Louisiana judicial interest rate.

As noted above, Triangle argues that delay damages represent the only financial risk to which Petsec is exposed as a result of the potential wrongful issuance of the preliminary injunction in this matter. However, Petsec argues otherwise. Specifically, Petsec has identified two additional items of possible damage, the lease rental payment due to be made by July 1, 2006 (a payment which would not be necessary if the well were in production), as well as the demobilization and re-mobilization costs associated with the suspension of drilling and completion activities. Despite filing a reply memorandum, Triangle has not responded to Petsec's representations on these points. As Petsec's representations are uncontested by Triangle, and as they appear reasonable, this Court will include those amounts in its calculations.

For these reasons, this Court finds that, in addition to the delay damages calculated above, Petsec also risks financial exposure in the amounts of $12,490 for the lease rental payment due to be made by July 1, 2006, and $323,553 for demobilization and re-mobilization costs associated with interrupting the completion of the well.

Finally, Petsec argues for the addition to the total security to be required of Triangle, of a premium in the range of $780,000 to $800,000 (an amount which represents 10% of the estimated cost of drilling a new well). Petsec suggests that it requires such security against the risk of catastrophic loss of the well caused by a hurricane. However, as Petsec has not demonstrated how

that already present risk is worsened by the existence of the preliminary injunction, this Court finds the argument both unpersuasive and speculative. This request is DENIED.

For the foregoing reasons, and as set forth hereinabove, the estimated total damages for which Petsec Energy, Inc. is at risk in the event that the preliminary injunction was wrongfully issued totals approximately $686,703. As a result, this Court will order Triangle Oil & Gas, Inc. to post security in the amount of $700,000.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___ day of June, 2006.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE